# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### RICHMOND DIVISION


**HOLLY MICHELLE LANDRY,**

       **Petitioner,**

**v.**                           **CIVIL ACTION NO. 3:13CV367**

**PHYLLIS A. BASKERVILLE,**

       **Respondent.**


## MEMORANDUM IN SUPPORT OF MOTON TO DISMISS


The respondent, by counsel, states, in support of this motion to dismiss, the following:

1.  Petitioner is being held pursuant to a judgment of the Circuit Court of the City of Norfolk entered on February 11, 1998, convicting her of capital murder, two counts of robbery, two counts of abduction, two counts of conspiracy and malicious wounding and sentencing her to a total sentence of life plus 50 years imprisonment. (Case No. CR96004116).

2.  Petitioner appealed her convictions to the Virginia Court of Appeals which, on August 4, 1998, denied the petition. (Petitioner's Exhibit M). The Virginia Supreme Court denied a further petition on October 29, 1998. (Record No. 981832).

3.     On March 4, 2004, the petitioner filed a petition for a writ of habeas corpus in the Circuit Court of the City of Norfolk. (Case No. CL04000963). On May 25, 2004, that court dismissed the petition under the state statute of limitations. The Virginia Supreme Court dismissed an appeal of the circuit court's denial of the writ on November 16, 2004. (Record No. 041769).

4.     The petitioner filed a petition for a writ of habeas corpus in this Court on February 23, 2005. (Civil Action No. 3:05cv120). This Court dismissed it as time-barred on March 29, 2006. The Fourth Circuit affirmed that decision on August 8, 2006. (Record No. 06-6679).

5.     On May 30, 2013, the Fourth Circuit granted authorization for the filing of a successive petition in this Court. (No. 13-247).

6.  Petitioner is attacking only her capital murder conviction on the following ground:

> *Miller v. Alabama* renders the petitioner's sentence unconstitutional and this new retroactive rule entitles her to habeas relief.

**Exhaustion**

7.     This claim has never been presented in state court. Consequently, it should be dismissed under *Teague v. Lane*, 489 U.S. 288 (1989). It is now barred as untimely under the Virginia statute of limitations, Virginia Code § 8.01-654(A) (2), as successive under Code § 8.01-654(B) (2) and under *Slayton v. Parrigan*, 215 Va. 27, 305 S.E.2d 680 (1974).

**Statute of Limitations**

8.    Section 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2254(d) to require a state prisoner to file her petition for a writ of habeas corpus within one year of the completion of the state court direct review process subject to tolling for the period when a properly filed state collateral review proceeding is pending. In this case petitioner's direct appeal was completed on January 27, 1999, when her time to seek certiorari from the decision of the Virginia Supreme Court expired. Her state habeas petition was filed on March 4, 2004, and the dismissal by the Virginia Supreme Court occurred on November 16, 2004. Petitioner's federal petition was filed with this Court on June 6, 2013. Thus, the petition was filed more than 14 years after the conviction became final. The state habeas was pending for less than 9 months. Consequently, the petitioner has delayed for more than 13 years before filing her petition. Accordingly, the provisions of § 2244, as amended, render this petition untimely and it should be dismissed.

9.    The petition is also successive and should be dismissed under 28 U.S.C. § 2244 (a) and (b).

10.    Landry asserts her petition is timely under 28 U.S.C. § 2244 (d) (1) (c) which permits filing within one year of "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and

made retroactively applicable to cases on collateral review." Similarly, with respect to dismissal of a successive petition, she argues her second petition is permitted because she "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244 (b) (2) (A). As shown below, the rule in *Miller v. Alabama,* 132 S. Ct. 2455 (2012), has not been made retroactive to this case.

### *Miller* Is Not Retroactive

11. "In general, . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301. "*Teague* makes the retroactivity of our criminal procedure decisions turn on whether they are novel. When we announce a 'new rule,' a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding." *Chaidez v. United States*, 568 U.S. ___, 133 S.Ct. 1103, 1107 (2013). Landry admits *Miller* is a new rule, but claims it is retroactive.

12. The Supreme Court explained the important federalism considerations underpinning the nonretroactivity doctrine.

> The "costs imposed upon the State[s] by retroactive application of new rules of constitutional law on habeas corpus . . . generally far outweigh the benefits of this application." In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, for it continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards. Furthermore, . . . [s]tate

> courts are understandably frustrated when they faithfully apply existing constitutional law only to have a federal court discover, during a [habeas] proceeding, new constitutional commands."

*Teague*, 489 U.S. at 310. Thus, "the *Teague* rule of nonretroactivity was fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings." *Danforth v. Minnesota*, 552 U.S. 264, 280-81 (2008).

13.    When a decision of the Supreme Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). However, the "new rule" applies to convictions that were already final "only in limited circumstances." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). "New **substantive** rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* at 351-52 (internal citations and footnote omitted) (emphasis in original). In these circumstances, the "new rule" applies retroactively "because [it] necessarily carr[ies] a significant risk that a defendant stands convicted of 'an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id.* at 352 (internal quotations and citations omitted).

> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of

the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding."

*Id.* (*quoting Saffle v. Parks*, 494 U.S. 484, 495 (1990) (quoting *Teague,* 489 U.S. at 311 (plurality opinion)).

14.    "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.  In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural."  *Summerlin*, 542 U.S. at 353 (internal citations omitted)

15.    At least two federal circuit courts have already ruled *Miller* not to be retroactive on habeas.  The Eleventh Circuit emphasized that "[t]he requirement that new rule be made retroactive by the Supreme Court 'is satisfied only if th[e] [Supreme] Court has held that the new rule is retroactively applicable to cases on collateral review."  *In Re Morgan*, 713 F.3d 1365, 1367 (11th Cir. 2013), *suggestion for rehearing en banc denied,* 2013 U.S. App. LEXIS 11756 (June 10, 2013) (*quoting Tyler v. Cain*, 533 U.S. 656, 662 (2001).  It then pointed out that the Supreme Court had not done so.  *Id.*

16.    The Eleventh Circuit then rejected the position that *Miller* created a substantive rule, because a rule is substantive only "when that rule places an entire class beyond the power of the government to impose

a certain punishment regardless of the procedure followed, not when the rule expands the range of possible sentences." *Id.* at 1368. The Fifth Circuit ruled similarly. "*Miller* does not satisfy the test for retroactivity because it does not categorically bar all sentences of life imprisonment for juveniles; *Miller* bars only those sentences made mandatory by a sentencing scheme." *Craig v. Cain*, 2013 U.S. App. LEXIS 431, 4-5 (5th Cir. 2013).

17.  Contrary to Landry's position, the Supreme Court in *Miller* did not prohibit the imposition of a sentence of life imprisonment without the possibility of parole on minors. "Our decision does not categorically bar a penalty for a class of offenders or type of crime — as, for example, we did in *Roper*[1] or *Graham*[2]. Instead, it mandates only that a sentencer follow a certain process — considering an offender's youth and attendant characteristics — before imposing a particular penalty." *Miller*, 132 S.Ct. at 2471.

18.  "Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 132 S.Ct. at 2469; *see also United States v. Maldonado*, 2012 U.S. Dist. LEXIS 166589 (S.D.N.Y. Nov. 20, 2012) (noting a juvenile offender "may still be

---

[1] *Roper v. Simmons*, 543 U.S. 551 (2005).
[2] *Graham v. Florida*, 560 U.S. ___, 130 S.Ct. 2011 (2010).

given a sentence of life imprisonment provided that such a sentence is imposed with due consideration of his 'chronological age [at the time of the offense] and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences.'") (quoting *Miller*, 132 S. Ct. at 2468); Symposium, *Inside America's Criminal Justice System: The Supreme Court on the Rights of the Accused and the Incarcerated: Developmental Detour: How the Minimalism of Miller v. Alabama Led the Court's "Kids are Different" Eighth Amendment Jurisprudence Down a Blind Alley*, 46 AKRON L. REV. 489, 491 (2013) (criticizing *Miller* for "its ***failure*** to rule categorically that the Eighth Amendment prohibits the imposition of life without parole on a juvenile regardless of the crime.") (Emphasis added).

19.     Landry says *Miller* is like *Penry v. Lynaugh*, 492 U.S. 302 (1989), because it prohibits imposing a certain category of punishment on a particular class of defendants. The category of punishment is life imprisonment without parole, which is concededly not prohibited, but only its mandatory imposition on juveniles. In *Penry* the Court ruled the death penalty, a certain category of punishment, could not be imposed in any way on mentally retarded defendants, a particular class of defendants. Similarly, *Roper* and *Atkins v. Virginia,* 536 U.S. 304 (2002) (prohibiting execution of mentally retarded individuals), were substantive changes similar to *Penry*. They are all different from *Miller*. The *Miller* Court prohibited not the sentence of life without parole but "the

sentencing scheme" by which it was imposed. 132 S.Ct. at 2469. Landry argues as if *Miller* was based only on cases like *Penry* and *Roper*. The Court, however, discussed two lines of precedent, the second of which involved the manner in which a particular penalty was imposed citing cases such as *Woodson v. North* Carolina, 428 U.S. 280 (1976) and *Lockett v.* Ohio, 438 U.S. 586 (1978). 132 S.Ct. at 2463-64.[3]

20. Additionally, Landry is not serving "a punishment that the law cannot impose," (Pet. Memo. 20 (quo*ting Summerlin*, 542 U.S. at 352). For that language in *Summerlin*[4] the Court cited *Bousley v. United States*, 523 U.S. 614, 620 (1998), where that Court held a case requiring an additional element to prove a federal firearms offense to apply retroactively. The distinction is clear between changing the elements of an offense and requiring a different procedure for imposition of an unchanged penalty. Similarly, there is no requirement in *Miller* that narrows the category of offenders eligible for life imprisonment without parole. All persons convicted of capital murder are still eligible to be so sentenced. For juveniles, that penalty can still be imposed after consideration of alternatives in light of potentially mitigating evidence.

21. As the Court said in *Penry*: "[I]f we held as a substantive matter, that the Eighth Amendment prohibits the execution of mentally

---

[3] Although Landry says these cases have been applied retroactively, she cites only *Sumner v. Shuman*, 483 U.S. 66 (1987), a pre-*Teague* case in which there is no discussion of retroactivity.

retarded persons as Penry ***regardless of the procedures followed***, such a rule would fall under the first exception to the general rule of nonretroactivity." 492 U.S. at 330 (emphasis added). Here, because the penalty is permitted, but only following appropriate procedures, nonretroactivity is appropriate. *Miller* mandates "that a sentencer follow ***a certain process***--considering an offender's youth and attendant characteristics--before imposing" a sentence of life imprisonment without the possibility of parole. 132 S. Ct. at 2471 (emphasis added).

22. The *Summerlin* case is helpful to this discussion. The Court ruled on the retroactivity of *Ring v. Arizona*, 536 U.S. 584 (2002), where the Court had held that the question whether an aggravating factor necessary to imposition of the death penalty was present had to be decided by the jury. 536 U.S. at 603-609. Summerlin argued that *Ring* was substantive.

> A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. In contrast, rules that regulate only the ***manner of determining*** the defendant's culpability are procedural. See *Bousley, supra,* at 620.
>
> Judged by this standard, *Ring*'s holding is properly classified as procedural. *Ring* held that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty." 536 U.S., at 609. Rather, "the Sixth Amendment requires that [those circumstances] be found by a jury." *Ibid.* This holding did not alter the range of conduct Arizona law subjected to the death penalty. It could not have; it rested entirely on the

---

[4] *Summerlin* did not involve any claim that the case for which retroactivity was sought effected a substantive change.

Sixth Amendment's jury-trial guarantee, a provision that has nothing to do with the range of conduct a State may criminalize. Instead, *Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. . . .

* * *

A decision that modifies the elements of an offense is normally substantive rather than procedural. New elements alter the range of conduct the statute punishes, rendering some formerly unlawful conduct lawful or vice versa. See *Bousley*, 523 U.S., at 620-621. But that is not what *Ring* did; the range of conduct punished by death in Arizona was the same before *Ring* as after. *Ring* held that, because Arizona's statutory aggravators restricted (as a matter of state law) the class of death-eligible defendants, those aggravators **effectively** *were* elements for federal constitutional purposes, and so were subject to the procedural requirements the Constitution attaches to trial of elements. 536 U.S., at 609. This Court's holding that, *because Arizona* has made a certain fact essential to the death penalty, that fact must be found by a jury, is not the same as **this Court's** making a certain fact essential to the death penalty. The former was a procedural holding; the latter would be substantive.

*Summerlin,* 542 U.S. at 354 (emphasis in original).

23. The Supreme of Minnesota, in finding *Miller* was not retroactive, emphasized that cases affecting the manner of imposition of a penalty are procedural.

[R]ules that "regulate only the manner of determining the defendant's culpability are procedural." *Schriro,* 542 U.S. at 353. "They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* at 352. The definition of a procedural rule for purposes of the first *Teague* exception extends to rules that regulate the manner of determining a defendant's sentence. *Lambrix v.*

> *Singletary,* 520 U.S. 518, 539 . . . (1997). In *Lambrix,* the Court considered whether the rule announced in *Espinosa v. Florida,* 505 U.S. 1079 . . . (1992), constituted a substantive or procedural rule under the *Teague* doctrine. 520 U.S. at 526-27. Under the *Espinosa* rule, an actor with capital sentencing authority must not be permitted to weigh invalid aggravating circumstances. 505 U.S. at 1082. The Court in *Lambrix* held that the *Espinosa* rule was procedural, not substantive, because it "neither decriminalized a class of conduct nor prohibited the imposition of capital punishment on a particular class of persons." 520 U.S. at 539 (quoting *Saffle v. Parks,* 494 U.S. 484, 495, . . . (1990)); *see also Sawyer v. Smith,* 497 U.S. 227, 241, . . . (1990) (holding that the rule announced in *Caldwell v. Mississippi,* 472 U.S. 320, 341*,* . . . (1985), which requires that a jury with capital sentencing authority must be made aware of the gravity of its task, was procedural).

*Chambers v. State*, 831 N.W.2d 311, 327 (Minn. 2013). Similarly, it is only the manner in which life imprisonment without parole can be imposed on juveniles that has been changed. As a procedural rule, *Miller* is not retroactive to habeas cases such as Landry's.

**Not A Watershed Change**

24. Landry argues that, if procedural, the change effected in *Miller* meets the "watershed rules" exception to *Teague.*

> In order to qualify as watershed, a new rule must meet two requirements. First, the rule must be necessary to prevent "an '"impermissibly large risk"'" of an inaccurate conviction. *Summerlin, supra,* at 356; see also *Tyler,* 533 U.S., at 665. Second, the rule must "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Ibid.* (internal quotation marks omitted; emphasis deleted). We consider each of these requirements in turn.

*Whorton v. Bockting*, 549 U.S. 406, 418 (2007).

25.     Landry's case does not involve any such rule.  It does not fit within the extremely small class of bedrock procedural elements of our jurisprudence.

> Whatever the precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring "observance of 'those procedures that . . . are "implicit in the concept of ordered liberty.""  *Teague, supra*, at 311 (quoting *Mackey v. United States*, 401 U.S. 667, 693 (1971) (Harlan, J., concurring in judgments in part and dissenting in part) (in turn quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937))).  As the plurality cautioned in *Teague*, "[b]ecause we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." 489 U.S., at 313.

*Graham v. Collins*, 506 U.S. 461, 478 (1993).

> And, because any qualifying rule "'would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge,'" *Graham, supra*, at 478 (quoting *Teague, supra*, at 313), **it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception.**

*Beard v. Banks*, 542 U.S. 406 (2004) (emphasis added).

26.     The mere fact that the *Miller* rule may increase the accuracy of sentencing decisions does not make it a watershed rule.

> Petitioner contends that the second *Teague* exception should be read to include new rules of capital sentencing that "preserve the accuracy and fairness of capital sentencing judgments." . . . It is thus not enough under *Teague* to say that a new rule is aimed at improving the accuracy of trial. More is required. A rule that qualifies under this exception must not only improve accuracy, but also "alter our understanding of the *bedrock procedural elements*" essential to the fairness of a proceeding.  *Teague, supra*, at 311 (quoting *Mackey*, 401 U.S., at 693).

*Sawyer v. Smith*, 497 U.S. 227, 242 (1990).

27.    "All of our Eighth Amendment jurisprudence concerning capital sentencing is directed toward the enhancement of reliability and accuracy in some sense." *Sawyer*, 497 U.S. at 243.  As a result, "the fact that a new rule removes some remote possibility of arbitrary infliction of the death sentence does not suffice to bring it within *Teague*'s second exception".  *Beard*, 542 U.S. at 419-20 (citing *Sawyer, 497 U.S.* at 243). Landry cannot show an altering of bedrock procedural elements.

28.    "[I]n order to meet this requirement, a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding. In applying this requirement, we again have looked to the example of *Gideon*, and 'we have not hesitated to hold that less sweeping and fundamental rules' do not qualify." *Whorton*, 549 U.S. at 421 (quoting *Beard,* 542 U.S. at 418).

29.    Even a case dealing with "structural error" does not involve "watershed rules."  In *Tyler v. Cain*, 533 U.S. 656 (2001), the petitioner sought to have the rule in *Cage v. Louisiana*, 498 U.S. 39 (1990), which been declared to involve a structural error in *Sullivan v. Louisiana*, 508 U.S. 275 (1993), applied retroactively.

> The only holding in *Sullivan* is that a *Cage* error is structural error. There is no second case that held that all structural-error rules apply retroactively or that all structural-error rules fit within the second *Teague* exception. The standard for determining whether an error is structural, see generally *Arizona v. Fulminante*, 499 U.S. 279 (1991), is not coextensive with the second *Teague* exception, and a holding

that a particular error is structural does not logically dictate the conclusion that the second *Teague* exception has been met.

*Tyler v. Cain*, 533 U.S. 656, 665-66 (2001).  Even more clearly the change in *Miller* has not created a watershed rule.

## Not Retroactive Because Companion Case Was A Habeas Proceeding

30.     Landry argues that *Miller* is retroactive because, when it was announced, it was made to apply to *Jackson v. Hobbs*, 132 S.Ct. 548 (2011), its companion case, a habeas corpus proceeding.  The fact that a new rule is set forth, even in a habeas case by itself, does not make that rule retroactive to cases on collateral review.  The new rule announced in *Padilla v, Kentucky*, 559 U.S. 359 (2010), a habeas proceeding, has been treated like any other new rule.  "*Teague* makes the retroactivity of our criminal procedure decisions turn on whether they are novel.  When we announce a 'new rule,' a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding." *Chaidez*, 133 S.Ct. at 1107.  In *Chaidez*, the petitioner had an active habeas proceeding pending when *Padilla* was announced and had raised that very issue. Nevertheless, the Court denied retroactivity and the dissent did not discuss the fact that *Padilla* had been a habeas case.  Of course, Landry, in any event, is not similarly situated with Jackson, because she was not on collateral review at the time *Miller* came down.

31.     Moreover, this issue was not discussed in *Miller*.

The State argues that granting relief to Schiro would require the retroactive application of a new rule, in violation of the principle announced in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion). *Teague* analysis is ordinarily our first step when we review a federal habeas case. The *Teague* bar to the retroactive application of new rules is not, however, jurisdictional. In this case, the State did not raise the *Teague* argument in the lower courts. While we ordinarily do not review claims made for the first time in this Court, see, *e.g., Taylor v. Freeland & Kronz*, 503 U.S. 638, 645-646 (1992), we recognize that the State, as respondent, is entitled to rely on any legal argument in support of the judgment below.

*Schiro v. Farley*, 510 U.S. 222, 228-29 (1994) (citations omitted).

Similarly, in *Miller* it does not appear that any party raised the argument that such relief could not be granted in a habeas proceeding at any time. *Chaidez* should be followed.

### The Virginia Sentencing Statutes Do Not Violate *Miller*

32.     Even if *Miller* could be applied retroactively, it should be not applied here because Landry's sentence was not truly mandatory as was the case in *Miller*.

### Facts

33.     The Virginia Court of Appeals set forth the following facts:

Shanice Prater, one of the victims, and Anthony Harmon, appellant's codefendant, testified in detail regarding appellant's active and voluntary participation in the conspiracy to abduct Prater, the abduction of Prater and Kalvin Sutton, the murder of Sutton, the malicious wounding of Prater, and the robbery of items from Prater's apartment. Prater and Harmon testified that appellant, without threats from her codefendants, willingly tied up Prater with duct tape and hit a duct-tape bound Sutton in the head with a hammer. Harmon testified that appellant voluntarily held a bleach-laden cloth over Sutton's face and participated in stabbing Prater. Appellant's fingerprints, along with those of several

codefendants, were recovered from the duct tape on both victims. In appellant's statement to the police, she admitted striking Sutton with a hammer. Appellant never told police that she was forced to participate in the criminal acts or that she feared for her own life if she refused to assist her codefendants.

(Petitioner's Exhibit M 1-2).

34. At the sentencing hearing the defense asked the court to suspend the sentence or to treat Landry under Virginia Code § 16.1-272. (Tr. 2/11/1998 at 8). Testimony was heard from Dr. Evan Nelson, a psychologist, who examined Landry and prepared a capital sentencing evaluation. (Petitioner Exhibit B). Three other witnesses testified on behalf of Landry. A pre-sentence report was introduced. (Tr. at 7). Dr. Nelson testified that "[g]roup offenses, that is, multiple offenders, are very much a function of being young." (Tr. at 19). This is due to "social pressures in teenage years." (Tr. at 20). Teenagers are more likely to conform out of fear of deviance and the pressure of group unanimity. (Tr. at 21-22). This can result in "a situation where it starts with something small and escalates to something terrible [which] is not an uncommon pattern because they drag themselves along to progressively more extreme decisions." (Tr. at 22-23). A person with low self-esteem is more likely to need to conform. (Tr. at 23).

35. Addressing Landry's particular characteristics, Nelson testified that she had not had "any sort of stable home environment." (Tr. at 23). She had experienced her parent's "very acrimonious divorce as well as an assaultive marriage." (Tr. at 23). Her parents did not see that she, fifteen-

years old, was enrolled in school when she came to Virginia. (Tr. at 23). These facts produced a high need to conform.

> Holly is low in her self-esteem. She has a high need for social approval. She tends to be dependent upon other people. She's very quick to take cues from people about what they want her to do and to do those things in order to please them so they will like her.

(Tr. at 24).

**Standard of Review**

36.     If this Court were to reach the merits of this claim, it would be reviewed *de novo* because of the absence of any adjudication of the issue in state court. *Lenz v. Washington*, 444 F.3d 295, 302 (4th Cir. 2006).

37.     Landry argues throughout that, in violation of the new rule in *Miller*, she was sentenced to a mandatory term of life imprisonment. This is not true. In Alabama and Arkansas, the sentence imposed is life without parole -- ALA. Code § 13A-6-2(c) (defendant convicted of aggravated murder shall "be sentenced to death or life imprisonment without parole"), ARK. Code § 5-4-10(b) (death or life imprisonment without parole) -- and **a life without parole sentence cannot be suspended by the trial court.** See ALA. Code § 15-22-50 (court has no authority to suspend execution of death sentence or any sentence greater than 15 years); ARK. Code § 5-4-10(e) (1) (A) (cannot suspend imposition of capital murder sentence or place such defendant on probation). *Miller* stresses that the new prohibition "forbids a sentencing scheme that **mandates** life in prison without possibility of parole for juveniles." 113

S.Ct. at 2469 (emphasis added). There is no such mandated punishment in Virginia.

38.     In Virginia, the sentence imposed for a Class 1 Felony (capital murder) is either death or life imprisonment, Va. Code § 18.2-10(a), and nothing in § 19.2-303 or any other statute prohibits a court from suspending execution of such a sentence or any part of such a sentence. Virginia's sentencing scheme is significantly different from that of Alabama and Arkansas and, in fact, already provides a method for the sentencing judge to consider and act upon mitigating evidence.

39.     Virginia does, in fact, have at least 29 statutes imposing "mandatory minimum" sentences for criminal conduct.[5]     The term "mandatory minimum" is defined in the following way: "'Mandatory minimum'" wherever it appears in this Code means, for purposes of imposing punishment upon a person convicted of a crime, that the court shall impose the entire term of confinement, the full amount of the fine and the complete requirement of community service prescribed by law. The court shall not suspend in full or in part any punishment described as mandatory minimum punishment." Va. Code § 18.2-12.1. The life

---

[5] Va. Code. §§ 18.2-36.1, 18.2-36.2, 18.2-46.3:3, 18.2-51.1, 18.2-53.1, 18.2-57, 18.2-57.1, 18.2-60.4, 18.2-61, 18.2-67.1, 18.2-67.2, 18.2-121, 18.2-154, 18.2-186.4, 18.2-248, 18.2-248.01, 18.2-248.03, 18.2-248.1, 18.2-248.5, 18.2-255, 18.2-255.2, 18.2-270, 18.2-308.1, 18.2-308.2, 18.2-308.2:2, 18.2-308.4, 18.2-374.1, 18.2-374.1:1, 18.2-374.3.

sentence imposed for capital murder does not preclude such suspension.[6]

40. Three Virginia statutes do impose mandatory life without parole sentences. §§ 18.2-61 (B) (2), 18.2-67.1 (B) (2), 18.2-67.2 (B) (3). The first section, dealing with rape, reads as follows:

> A. If any person has sexual intercourse with a complaining witness, whether or not his or her spouse, or causes a complaining witness, whether or not his or her spouse, to engage in sexual intercourse with any other person and such act is . . . (iii) with a child under age 13 as the victim, he or she shall be guilty of rape.

> B. A violation of this section shall be punishable, in the discretion of the court or jury, by confinement in a state correctional facility for life or for any term not less than five years; and in addition:

>                \*          \*          \*

> 2. For a violation of clause (iii) of subsection A where it is alleged in the indictment that the offender was 18 years of age or older at the time of the offense, the punishment shall include a ***mandatory minimum term of confinement for life.***

(Emphasis added). There is no similar language in Code §§ 18.2-10(a) or 18.2-31.

41. Code § 19.2-303 states in part: "After conviction, whether with or without jury, the court may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the

---

[6] The "no parole" aspect of Landry's life resulted upon entry of her judgment. Under Code § 53.1-165.1, Landry is not eligible for parole because she was "sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995."

defendant on probation under such conditions as the court shall determine. . . ." Following conviction in a criminal proceeding, trial courts are specifically vested with the authority to "suspend the sentence in whole or part," "suspend [its] imposition" and "in addition . . . place the accused on probation," all "under such conditions as the court shall determine." *Deal v. Commonwealth,* 15 Va. App. 157, 160, 421 S.E.2d 897, 899 (1992). "[T]he purposes of Code § 19.2-303 are rehabilitative in nature, *Esparza v. Commonwealth,* 29 Va. App. 600, 607, 513 S.E.2d 885, 888 (1999), and the statute should be liberally construed." *Stokes v. Commonwealth,* 61 Va. App. 388, 393, 736 S.E.2d 330, 333 (2013). The suspension statutes "obviously confer upon trial courts 'wide latitude' and much 'discretion in matters of suspension and probation . . . to provide a remedial tool . . . in the rehabilitation of criminals' and, to that end, 'should be liberally construed.'" *Dunham v. Commonwealth,* 59 Va. App. 634, 637, 721 S.E.2d 824, 825-26 (2012) (citations omitted). "[U]nder the Virginia practice, the punishment as fixed by the jury is not final or absolute, since its finding on the proper punishment is subject to suspension by the trial judge, in whole or in part, on the basis of any ***mitigating facts*** that the convicted defendant can marshal." *Vines v. Muncy*, 553 F.2d 342, 349 (4th Cir. 1977) (emphasis added).

42. Here, Landry had a substantial sentencing hearing at which Dr. Evan Nelson and three other witnesses testified for the petitioner. Dr. Nelson presented a lengthy "capital sentencing evaluation," discussing

Landry's psychological condition and stating "there are many issues about the defendant's history and character which might be considered mitigating by the trier of fact." (Petitioner's Exhibit B 4). Dr. Nelson testified about her unstable childhood and its adverse effects. (Tr. 2/11/98 at 23-24). On the basis of this evidence Landry's attorney asked the court to "suspend the sentence in this case." (Tr.at 8). In argument the attorney said to the court: "I would ask the court to suspend the life sentence." (Tr. at 45). The court, having considered the pre-sentence report, chose not to do so and sentenced Landry to life imprisonment on the capital murder charge with no time suspended. (Petitioner's Exhibit L). The record demonstrates that Landry presented the very type of evidence information discussed in *Miller* and that his attorney argued for a sentence of less than life. After considering that evidence and argument, however, the trial judge imposed a life sentence with no time suspended.

43. The respondent has requested that the state trial court records be forwarded to this Court.

44. Respondent denies each and every allegation not expressly admitted herein.

WHEREFORE, respondent prays that the petition for writ of habeas corpus be dismissed.

Respectfully submitted,

**PHYLLIS A. BASKERVILLE**

By:_____/s/_____

Eugene Murphy
Senior Assistant Attorney General
Virginia Bar No. 18380
Attorney for Respondent
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone:  (804) 786-2071
Fax:  (804) 371-0151
Email: emurphy@oag.state.va.us

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 29, 2013, I electronically filed a true copy of the foregoing memorandum with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Richard F. Shordt, Esquire
Virginia State Bar #80928
Attorney for Holly Michelle Landry
Wilmer, Cutler, Pickering, Hale & Dorr, LLp
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000 (voice)
(202) 663-6363 (fax)
Email: richard.shordt@wilmerhale.com


By:_____/s/_____

Eugene Murphy
Senior Assistant Attorney General
Virginia Bar No. 18380
Attorney for Respondent
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone:  (804) 786-2071
Fax:  (804) 371-0151
Email: emurphy@oag.state.va.us