**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

_____
                                                             )
HOLLY MICHELLE LANDRY,                )
                                                             )
                        Petitioner,                     )
                                                             )
            v.                                               )            Case No. 3:13-cv-367 (MHL)
                                                             )
PHYLLIS A. BASKERVILLE,              )
Warden, Fluvanna Correctional           )
Center for Women,                             )
                                                             )
                        Respondent.                   )
_____)


## PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

Petitioner Holly M. Landry submits the following Memorandum of Law in Opposition to

the Respondent's Motion to Dismiss.

Ms. Landry was sentenced to life without parole plus fifty years when she was 16 years

old.  The judge at Ms. Landry's trial had no discretion under VA. CODE § 18.2-10(a), the

applicable sentencing statute, to impose a lesser sentence.

Fourteen years later, the Supreme Court concluded in *Miller v. Alabama* that the Eighth

Amendment "forbids a sentencing scheme that mandates life in prison without possibility of

parole for juvenile offenders."  132 S. Ct. 2455, 2469 (2012).  Accordingly, in the wake of

*Miller*, a sentence of life without parole for a juvenile cannot withstand constitutional scrutiny

unless the sentencer has determined it is proportional based on an individualized consideration of

mitigating factors.  *See id*. at 2467; Landry Petition, ECF No. 1, at 2 (hereinafter "Petition").

Had Ms. Landry's judge been permitted, much less required, to consider such mitigating factors,

as *Miller* mandates, those considerations would have weighed strongly in favor of leniency for precisely the same reasons that the Supreme Court has now concluded that they must be taken into account. *See* Petition at 3.

As set forth in detail in Ms. Landry's petition, *Miller* announced a new, substantive constitutional rule that applies retroactively to cases on collateral review. Nothing in Respondent's motion to dismiss suggests otherwise or provides any basis for this Court to deny Ms. Landry the relief to which *Miller* entitles her.

***First***, Respondent contends that Ms. Landry's *Miller* claim should be dismissed because it has never been presented in state court. However, Respondent effectively concedes that no mechanism exists whereby Ms. Landry can now assert her claim in state court. Where, as here, no true avenue to relief exists in state court, exhaustion of a federal constitutional claim in state court is not required.

***Second***, Respondent contends that *Miller* announced a purely procedural rule that therefore should not apply retroactively to cases like Ms. Landry's. But Respondent ignores the substantive import of the rule announced in *Miller*, mischaracterizes the applicable standard for retroactivity, and unconvincingly seeks to sidestep the fact that the Supreme Court has already made the *Miller* rule retroactive by applying it to Miller's companion case.

***Finally***, Respondent argues that Ms. Landry's sentence did not violate *Miller* because the sentencing judge had discretion to suspend her life sentence. But Respondent's novel reading of Virginia's sentencing laws—which has never been adopted by a Virginia court—cannot be squared with the plain language of VA. CODE § 18.2-10(a) (1998), under which Ms. Landry's sentencing judge was presented with two and only two options: "death, or imprisonment for

life."[1]  Nor can it be reconciled with the State's own position at Ms. Landry's sentencing, when it successfully advised the sentencing judge that VA. CODE § 18.2-10(a) left no discretion beyond those two options.

Ms. Landry's sentence is unconstitutional.  Ms. Landry respectfully requests that this Court deny Respondent's Motion to Dismiss and grant the relief requested in her petition.

## I.    RESPONDENT EFFECTIVELY CONCEDES THAT MS. LANDRY IS EXCUSED FROM EXHAUSTION UNDER 28 U.S.C. § 2254(B)(1)(B)(i)-(ii).

As set forth more fully in Ms. Landry's petition, on June 25, 2012, the Supreme Court announced a new rule of constitutional law in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which renders unconstitutional the mandatory life without parole sentence Virginia imposed upon Ms. Landry.  Respondent contends that Ms. Landry's claim that *Miller* renders her sentence unconstitutional should be dismissed because it has never been presented in state court.  *See* Resp't Mem. Supp. Mot. Dismiss, at 2.   But Respondent simultaneously concedes that such a claim in Virginia state court would be "barred as untimely" under the applicable statute of limitations.  *Id*. (citing VA CODE § 8.01-654).  Because *Miller* was decided nearly fourteen years after the Virginia's statute of limitations for collateral relief expired, it was not possible—by definition—for Ms. Landry to assert a *Miller* claim during the limitations period, nor does Respondent argue that she could have done so.  And because, as Respondent concedes, any claim presented by Ms. Landry in a state collateral proceeding would now be barred as untimely, no Virginia court can rule on the merits of Ms. Landry's *Miller* claim.  Under these circumstances, where presentation of her *Miller* claim to a state court would be futile, Ms. Landry is excused from any requirement that she "exhaust" the claim in state court before proceeding in federal

---

[1]    VA. CODE § 18.2-10(a) is quoted as it existed at the time of Ms. Landry's sentencing in 1998.

court.[2] 28 U.S.C. § 2254(b)(1)(B)(i)-(ii) (exhaustion not required where "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant"); *see also Harris v. Reed*, 489 U.S. 255, 268 (1989) (O'Connor, J., concurring) ("[I]n determining whether a remedy for a particular constitutional claim is 'available,' the federal courts are authorized, indeed required, to assess the likelihood that a state court will accord the habeas petitioner a hearing *on the merits* of his claim.") (emphasis added).

## II.     *MILLER* IS A NEW SUBSTANTIVE RULE MADE RETROACTIVE BY SUPREME COURT PRECEDENT

As set forth in detail in Ms. Landry's petition, the Supreme Court's decision in *Miller* announced a new, substantive constitutional rule that applies retroactively to cases on collateral review.  Respondent argues that the *Miller* rule is merely procedural—and, consequently, is not retroactive—purportedly because it affects only the "manner of imposition" of a particular penalty, and does not "categorically" ban the imposition of life without parole on juvenile defendants.  Resp't Mem. Supp. Mot. Dismiss, at 8, 11, 12.  This argument ignores the substantive import of the rule announced in *Miller* and advances a retroactivity standard that finds no support in the Supreme Court's jurisprudence.  Contrary to Respondent's position, settled constitutional principles dictate that *Miller* be applied retroactively.

### A.     *Miller* Made A Substantive Change In Virginia Law

*Miller* holds that a mandatory sentencing scheme that precludes consideration of youth-related characteristics before the imposition of life without parole on a juvenile defendant

---

[2]      Indeed, in pointing to a time-barred mechanism, Respondent has identified precisely the type of "door that has been forever sealed" that other courts have found insufficient.  *See Russell v. Rolfs*, 893 F.2d 1033, 1037-38 (9th Cir. 1990) (explaining that "[t]he word 'available' as used in 28 U.S.C. § 2254(b) … does not refer to an avenue that exists on a map but is closed permanently to the kind of vehicle being driven by the defendant").

violates the Eighth Amendment's prohibition on cruel and unusual punishment. 132 S. Ct. at 2475. *Miller* is not, as Respondent attempts to characterize it, merely about the procedures that must be followed before imposing a particular sentence. Rather, *Miller* categorically changes the range of sentencing outcomes that a juvenile defendant faces for a homicide offense. VA. CODE § 18.2-10(a) permitted only death or life without parole for any defendant convicted of homicide. As a result, in the wake of *Miller*, that statute "could not be followed in homicide cases involving juvenile defendants." *Jones v. State*, -- So.3d -- 2013 WL 3756564, at *3 (Miss. July 18, 2013). *Miller* instead requires that the range of available outcomes be broadened to include a lesser sentence than life without parole, if the mandatory consideration of mitigating factors requires such a sentence. *Id.*; *Miller*, 132 S. Ct at 2469 (noting that the imposition of life without parole on juveniles "will be uncommon"). *Miller* therefore "prohibit[s] the application of [Virginia's] existing substantive law" and "modifies [Virginia's] substantive law by narrowing its application for juveniles." *Jones*, 2013 WL 3756564, at *3. In short, *Miller* does not "regulate only the *manner of determining* the defendant's culpability," *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004) (emphasis in original), but changes the *substance* of the law by forbidding the imposition of life without parole unless it is deemed to be a proportional sentence after consideration of mitigating factors, including those inherent to youth. That is a substantive change: Before *Miller*, Virginia courts not only *could*, but *were required to*, sentence a juvenile defendant to life without parole notwithstanding any countervailing considerations that would, under the Eighth Amendment, dictate a lesser sentence. After *Miller*, courts may not sentence a juvenile defendant to life without parole unless such a sentence is proportional taking into account all of the characteristics of youth that lessen juvenile offenders' culpability. Respondent's attempt to

paint *Miller* as imposing a mere "procedural" requirement, that will not change substantive

outcomes, distorts the Supreme Court's reasoning and holding beyond recognition.

To be sure, the rule announced in *Miller* includes a procedural component, in the sense

that it requires the sentencer to "follow a certain process" before imposing life without parole on

a juvenile defendant.  132 S. Ct. at 2471.  But other newly announced substantive rules have

necessarily included procedural components, and the *Miller* rule is readily distinguishable from

purely procedural rules that genuinely lack any substantive component.  As the Supreme Court

of Iowa recently held, although "*Miller* does mandate a new procedure … the procedural rule for

a hearing is the result of a *substantive change in the law* that prohibits mandatory life-without-

parole sentencing."  *State v. Ragland*, -- N.W.2d -- 2013 WL 4309970, at *6 (Iowa Aug. 16,

2013) (emphasis added).  That is, *Miller* applies retroactively because any sentence of life

without parole imposed on a juvenile defendant under a statute like Virginia's that precludes

consideration of the defendant's youth "'necessarily carr[ies] a significant risk that [the]

defendant' . . . [was given] a punishment that the law cannot impose upon him.'"[3]  *Id.* (quoting

*Summerlin*, 542 U.S. at 352).

---

[3]     In support of its position that a new rule must "categorically" ban a particular penalty to be retroactive, Respondent suggests that the Supreme Court's decision in *Woodson v. North Carolina*, 428 U.S. 280 (1976), announced a purely procedural rule because it involved only the "manner in which a particular penalty was imposed."  Resp't Mem. Supp. Mot. Dismiss, at 9. This is wrong.  Like *Miller*, *Woodson* invalidated the mandatory imposition of a particularly severe sentence—capital punishment.  As in *Miller*, *Woodson* took issue with the *mandatory* nature of a sentencing statute that "exclude[d] from consideration" mitigating factors that might warrant a sentence less harsh than "the ultimate punishment of death."  *Woodson*, 428 U.S. at 304.  And as is the case in *Miller*, *Woodson* did not categorically ban the "ultimate punishment" itself, but its mandatory imposition.  But the Supreme Court never had the opportunity to consider whether the *Woodson* rule was substantive for retroactivity purposes, and there is no basis to conclude that the Supreme Court would have relegated *Woodson* to a procedural rule. Had it done so, it would have denied retroactive relief to an individual who had been unconstitutionally denied the opportunity to seek a sentence less severe than death.  In short, there is simply no legal support for Respondent's suggestion that a new rule must "categorically" ban a particular penalty in order to apply retroactively.

Respondent's attempt to analogize *Miller* to *Ring v. Arizona* is misplaced. In *Ring*, the Supreme Court held that a jury, rather than a sentencing judge, must find an aggravating circumstance necessary for the imposition of the death penalty. 536 U.S. 584, 609 (2002). The Court later emphasized that the rule announced in *Ring*, which merely allocated decision-making authority to a jury, was purely procedural because it altered only "the range of permissible methods for determining whether a defendant's conduct is punishable by death," not " the range of conduct Arizona law subjected to the death penalty," and thus did not change the sentencing outcomes available to a defendant. *Summerlin*, 542 U.S. at 353. In other words, *Ring* changed the permissible decision-maker, but not the factors to be considered in determining whether a sentence could constitutionally be imposed. In sharp contrast, *Miller* compels the sentencer to consider factors it was previously forbidden to consider before determining that life without parole is a proportional sentence for a juvenile offender, and thus by definition narrows the category of cases in which life without parole may be imposed. *See Miller,* 142 S. Ct. at 2469 (anticipating that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon"). That *Miller* did not bar imposition of life without parole on juveniles altogether is irrelevant: *Miller* made clear that the characteristics of youth will make life without parole a constitutionally disproportionate punishment for some juvenile offenders. That is an archetypally *substantive* rule of constitutional law.

For that reason, Respondent's attempt to manufacture a distinction between *Miller* and previously-announced substantive rules misses the mark. For example, Respondent concedes that the Eighth Amendment prohibition on the execution of mentally retarded persons announced in *Atkins v. Virginia,* 536 U.S. 304, 321 (2002), is substantive. Resp't Mem. Supp. Mot. Dismiss, at 8. But *Atkins* is no different than *Miller* in this regard: While *Atkins* held that the

death penalty is *never* a constitutional sentence for the mentally retarded in light of their special characteristics that reduce their culpability, *Miller* made clear that life without parole will *infrequently* be a constitutional sentence for juvenile offenders in light of special characteristics that reduce their culpability. The difference between *never* and *infrequently* is not the difference between *substantive* and *procedural.* And while the substantive constitutional holdings of both *Atkins* and *Miller* are necessarily implemented through mandatory *procedures* by which a fact-finder assesses either a defendant's mental capacity, *see, e.g.*, *Atkins v. Virginia*, 581 S.E.2d 514, 517 (Va. 2003) (remanding Atkins' case "for a hearing on the sole issue of whether Atkins is mentally retarded"), or a defendant's youth-related characteristics, that does not change the fact that both holdings are firmly grounded in the substance of the Eighth Amendment.

Indeed, Respondent offers no authority whatsoever for the contention that a constitutional rule must categorically bar the imposition of a particular sentence to be substantive and thus retroactive. As the Supreme Court of Mississippi has now recognized, *Miller* applies retroactively—notwithstanding that it "did not impose a categorical ban on the punishment that the substantive law could impose"—because "it explicitly foreclosed imposition of a mandatory sentence of life without parole on juvenile offenders" and thus barred imposition of life without parole on juvenile offenders whose youthful characteristics make that an unconstitutionally disproportionate sentence. *See Jones*, 2013 WL 3756564, at *3-4.[4]

### B. Cases Cited By The Respondent Are Not Binding On This Court, Not Persuasive, And Have Been Rejected By The Fourth Circuit

The decisions on which Respondent relies for its contrary argument are not binding on this Court, cannot be squared with recent Fourth Circuit orders, and in any event, are wrongly

---

[4]    In any event, even if the "categorical" nature of a decision were relevant, *Miller does* "categorically" ban the imposition of a particular penalty—a mandatory life sentence—on a defined set of defendants—juveniles.

decided.

Respondent relies on *Craig v. Cain*, No. 12-30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013), and *In re Morgan*, 713 F.3d 1365 (11th Cir. 2013), decisions in which courts of appeals denied motions for leave to file successive habeas petitions relying on *Miller*. *See* Resp't Mem. Supp. Mot. Dismiss, at 6-7. Neither should affect this Court's consideration of Ms. Landry's petition. They are not binding precedent in this Circuit—indeed, *Craig* is not binding even in its Circuit of origin, since the Fifth Circuit chose to issue its opinion as an unpublished order with no precedential value.[5] More importantly, the Fourth Circuit has resoundingly rejected the conclusions reached by these courts by granting *nine* motions for permission to file successive habeas petitions raising claims under *Miller*.[6] It did so after having been made aware of the *Craig* and *Morgan* decisions. *See* Response Brief Opposing Motion for Authorization, *James-Bey*, No. 12-287 (Jan. 23, 2013); Letter of Supplemental Authority, *James-Bey*, No 12-287 (Apr. 17, 2013). Thus, the cursory analysis in *Craig* and *Morgan* provides no support for Respondent's position here.[7]

The Minnesota Supreme Court's decision in *Chambers v. State*, 831 N.W.2d 311 (Minn.

---

[5]    In fact, the Fifth Circuit decided *Craig* without the benefit of briefing. Petitioner's Motion to Withdraw, *Craig*, No. 12-30035 (Jan. 14, 2013).

[6]    *See In re Holly Landry*, No. 13-247 (4th Cir. May 30, 2013) (order granting authorization to file successive habeas petition based on *Miller*); *In re Montgomery*, No. 13-290 (4th Cir. July 23, 2013) (same); *In re Dumas*, No. 13-291 (4th Cir. July 11, 2013); *In re McLean*, No. 13-286 (4th Cir. July 11, 2013) (same); *In* re Clem, No. 13-285 (4th Cir. July 9, 2013) (same); *In re Holden*, No. 13-264 (4th Cir. June 19, 2013) (same); *In re Tunstall*, No. 12-362 (4th Cir. June 18, 2013) (same); *In* re Stewart, No. 13-257 (4th Cir. June 10, 2013) (same); *In re James-Bey*, No. 12-287 (4th Cir. May 10, 2013) (same).

[7]    Respondent separately points to a denial of en banc rehearing by the Eleventh Circuit in *Morgan* in support of its position. But that decision is not precedential in any Circuit, *see In re Morgan*, 717 F.3d 1186 (11th Cir. 2013), and Judge Pryor's separate concurrence is directed not to the question before this Court but to the exceptionally high standard necessary to secure en banc review. *Id.* at 1195 (Pryor, J., concurring) ("Even in matters of life and death, we rarely grant en banc review.").

2013), issued over vigorous dissents, *see id.* at 331 (Anderson, J., dissenting); *id.* at 342 (Page, J, dissenting), is similarly not binding and not persuasive. Expressly relying on the *Craig* decision that the Fourth Circuit has declined to follow, *see id.* at 328, the majority in *Chambers*, like Respondent, hinged its conclusion on the mistaken premise that *Miller* is not retroactive because the Supreme Court did not categorically ban life without parole sentences for juveniles, *see id*; *see also id.* at 336-37 (Anderson, J., dissenting) (noting that *Miller*'s retroactivity turns on the fact that it narrowed the circumstances under which life without parole may constitutionally be imposed on juvenile offenders, not whether its ban on juvenile life without parole is unconditional).

Finally, Respondent says nothing about the unanimous decisions of the Supreme Court of Mississippi and the Supreme Court of Iowa (the latter issued after Respondent's motion) holding that *Miller* is indeed retroactive. *See Jones*, 2013 WL 3756564, at *5; *Ragland*, 2013 WL 4309970, at *6. In *Jones,* the Supreme Court of Mississippi held that the Supreme Court's ban on mandatory life without parole for juveniles is retroactive because, by "announc[ing] a new obligation prohibiting the application of our existing substantive law, [the Supreme Court] modified Mississippi substantive law." *See Jones*, 2013 WL 3756564, at *3. Thus, the Court correctly concluded that the *Miller* rule cannot be characterized as procedural. Even more recently, the Supreme Court of Iowa squarely rejected Respondent's view that the rule announced in *Miller* is purely procedural and concluded that Miller works a substantive change in the law and thus applies retroactively. *Ragland*, 2013 WL 4309970, at *5-8.

Like the Mississippi and Iowa statutes at issue in *Jones* and *Ragland*, Virginia's capital murder sentencing regime must be modified to comply with *Miller*. More specifically, in all three states, sentencers must now consider a defendant's youth-related characteristics before

determining whether a sentence of life without parole is constitutionally proportionate, and *Miller* makes clear that in many cases it will not be. This substantive change in the law, restricting Virginia's ability to impose life without parole on juvenile offenders, entitles Ms. Landry to relief from her unconstitutional sentence.

### C. In Applying *Miller* to Its Companion Case on Collateral Review, The Supreme Court Made Clear That *Miller*'s Holding Is Retroactive

In consolidating *Miller* with a case before it on collateral review and simultaneously declaring unconstitutional the mandatory life sentence without the possibility of parole for Kuntrell Jackson—whose conviction, like Ms. Landry's, had long since been final—the Supreme Court necessarily made the rule retroactive to all cases on collateral review. *Miller*, 132 S. Ct. at 2475. As the Supreme Court of Iowa observed, "there would have been no reason" for the Supreme Court to apply the rule in *Miller* to Jackson's case "if it did not view the *Miller* rule as applying retroactively to cases on collateral review." *Ragland*, 2013 WL 4309970, at *7. As a teenager also sentenced to a term of life in prison without parole more than a decade before the Supreme Court issued its decision in *Miller*, Ms. Landry is a similarly situated defendant for whom evenhanded justice requires that she be afforded the benefit of this rule and that her sentence be vacated. *Teague v. Lane*, 489 U.S. 288, 300 (1989).[8]

Rather than grapple with the obvious implication of the application of *Miller* to *Jackson*, Respondent argues that the fact that a new rule was first announced in a habeas case does not by

---

[8] Respondent incorrectly states that Ms. Landry is not similarly situated to Jackson "because she was not on collateral review at the time *Miller* came down." Resp't Mem. Supp. Mot. Dismiss, at 15. She *was* similarly situated to Jackson, because her conviction, like his, was final when the rule in *Miller* was announced, and applying the rule to Jackson but not Ms. Landry would thus be inequitable. *See e.g. Stovall v. Denno,* 388 U.S. 293, 301 (1967) ("Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue.").

itself make that rule retroactive to cases on collateral review.  Resp't Mem. Supp. Mot. Dismiss, at 15.  Respondent's contention again misconstrues both Ms. Landry's argument and Supreme Court jurisprudence on this issue.

It is settled that the Supreme Court can make a rule retroactive through multiple holdings when those holdings "logically permit no other conclusion than that the rule is retroactive." *Tyler v. Cain*, 533 U.S. 656, 668 (2001) (O'Connor, J., concurring).  Because the Supreme Court simultaneously created the new rule in *Miller* and applied it to Mr. Jackson on collateral review in a separate but consolidated case, the only logical conclusion is that the rule is retroactive.  *See id.* at 663 ("The new rule becomes retroactive… *simply by the action of the Supreme Court*.") (emphasis added).  Thus, Respondent's reliance on two habeas cases decided three years apart, in which a new rule described in the first, *Padilla v. Kentucky*, 559 U.S. 356 (2010), was deemed not to be retroactive to a similar case on collateral review, *Chaidez v. United States*, 133 S. Ct. 1103 (2013), fails.  The issue here is not whether a rule first announced on collateral review is automatically retroactive—it is not—but rather whether Ms. Landry deserves the benefit of the rule in *Miller* because the Supreme Court has *in fact made it retroactive*.  *Tyler*, 533 U.S. 666-67 ("[T]his Court can make a rule retroactive over the course of two cases . . . with the right combination of holdings.").  That the results in *Miller* and *Jackson* necessarily form the "right combination of holdings" is indisputable:  Were *Miller* not retroactive, then Mr. Jackson's sentence would not have been vacated.

## III.    *MILLER* RENDERS VIRGINIA'S CAPITAL MURDER SENTENCING REGIME UNCONSTITUTIONAL AS APPLIED TO JUVENILES.

### A.    Ms. Landry's Offense Carried A Mandatory Sentence of Life Without Parole

Ms. Landry was charged with a Class 1 felony under Virginia law when she was 16 years old.  Following her conviction, she was sentenced pursuant to VA. CODE § 18.2-10(a), which in

1998 provided as follows: "The authorized punishments for conviction of a felony are: (a) For Class 1 felonies, death, or imprisonment for life and, subject to subdivision (g), a fine of not more than $100,000."[9] This statute is unequivocal. The sentencing judge had only two options when sentencing Ms. Landry: death or life in prison.

Respondent now argues that the mandatory life without parole sentence imposed upon Ms. Landry was "not truly mandatory," and that as a result, the rule announced in *Miller* does not apply. Resp't Mem. Supp. Mot. Dismiss, at 16. Specifically, Respondent asks this Court to look past the plain language of § 18.2-10(a) and hold that the sentencing judge had authority to suspend Ms. Landry's sentence pursuant to VA. CODE § 19.2-303, because even though § 18.2-10(a) by its terms presented the sentencing judge with only two options, it did not separately (and superfluously) *expressly prohibit* the suspension of punishment for Class 1 felonies. Resp't Mem. Supp. Mot. Dismiss, at 19. Respondent provides no support for this novel interpretation of Virginia's sentencing statutes. This Court should reject it for at least three independent reasons.

***First***, as explained above, the language of VA. CODE § 18.2-10(a) is clear that the punishment for those convicted of a Class 1 felony is either death or life imprisonment. Respondent would have this Court read into § 18.2-10(a) a provision that permits the sentencing judge to suspend the prescribed punishment, effectively allowing the judge to commute any conviction for such crimes. But Respondent's interpretation is impossible to square with the express language of the statute and would expand the authority of the sentencing judge well beyond that set by the Virginia legislature. The Virginia Supreme Court has made clear that such an interpretation is impermissible. "If the language of a statute is unambiguous, courts may

---

[9]     VA. CODE § 18.2-10(g) (1998) provided: "Except as specifically authorized in subdivision (e) or (f), or in Class 1 felonies for which a sentence of death is imposed, the court shall impose either a sentence of imprisonment together with a fine, or imprisonment only."

not interpret the language in a way that effectively holds that the General Assembly did not mean what it actually expressed." *Jenkins v. Mehra*, 704 S.E.2d 577, 583 (Va. 2011). This is because "[w]hen the legislature has spoken plainly it is not the function of courts to change or amend its enactments under the guise of construing them. The province of statutory construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation." *Lahey v. Johnson*, 720 S.E.2d 534, 537 (Va. 2012). Here, VA. CODE § 18.2-10(a) is unambiguous; it does not provide a sentencing judge authority to suspend a sentence.

Notably, Respondent provides no support for its novel interpretation of Virginia's sentencing laws, failing to identify a single instance in which a Virginia court has concluded that VA. CODE § 19.2-303 grants it the authority to suspend the punishment mandated under VA. CODE § 18.2-10(a) for Class 1 felonies. Indeed, Respondent does not identify a single case in which a Virginia court has even *contemplated* the possibility of suspending punishment for a Class 1 felony. The absence of any such precedent is powerful evidence that VA. CODE § 18.2-10(a) does not provide courts with the discretion Respondent imagines.

*Second*, even setting aside the unambiguous language of § 18.2-10(a), other Virginia sentencing statutes make clear that the sentencing judge had no authority to suspend Ms. Landry's life without parole sentence. For example, VA. CODE § 19.2-264.4, which prescribed the procedure for Ms. Landry's sentencing hearing, provides: "Upon a finding that the defendant is guilty of an offense which may be punishable by death, a proceeding shall be held which *shall be limited to a determination as to whether the defendant shall be sentenced to death or life imprisonment*" (emphasis added). Like § 18.2-10(a), this statute clearly prohibited the court from considering any punishment besides death or life imprisonment, and like § 18.2-10(a), it *foreclosed* the possibility that the sentencing judge could consider suspending Ms. Landry's

sentence by limiting the judge's inquiry to the two mandated punishments.

Respondent cites a number of recently enacted Virginia statutory provisions relating to "mandatory minimums" and urges the Court to analyze the applicable sentencing statute, VA. CODE § 18.2-10(a), in the context of those statutes. *See* Resp't Mem. Supp. Mot. Dismiss, at 19-21. But none of the statutory provisions identified by Respondent existed in 1998 when Ms. Landry was sentenced,[10] and Respondent does not explain how references to mandatory minimums in later-enacted laws could retroactively inject discretion into VA. CODE § 18.2-10(a) where none existed at the time of Ms. Landry's sentencing. Whatever discretion the existence of those statutes might implicitly provide a sentencing court today has no bearing on this case. The relevant statutory framework is the one that was in place in 1998, and under that framework, the sentencing judge had no discretion once Ms. Landry was convicted of a Class 1 felony.

***Third***, and consistent with the statutory framework described above, the State's position during Ms. Landry's sentencing hearing was that the sentencing judge had no discretion in sentencing her to life in prison. Indeed, the State's position was unequivocal: "This defendant committed capital murder. She was charged with that. She was convicted of that offense. That offense, by statute in this Commonwealth, has two punishments: Life imprisonment or the death penalty." (Sentencing Hearing Transcript, Ex. A, at 46) (hereinafter "Hearing Tr."). Having successfully advanced that interpretation of the applicable law in the context of Ms. Landry's sentencing, Respondent should not now be permitted to argue the opposite in defense of the

---

[10]     VA. CODE § 18.2-12.1, which defines "mandatory minimum" sentences, was enacted in 2004, at which time the statutes imposing mandatory minimum sentences cited by Respondent were amended to include such language. *See* 2004 Virginia Laws Ch. 461 (H.B. 1059) (enacted Apr. 12, 2004). Moreover, the three statutes relating to violent sexual crime were similarly amended in 2012. *See* 2012 Virginia Laws Ch. 575 (S.B. 436) (amending Va. Code §§ 18.2-61; 18.2-67.1; 18.2-67.2) (enacted Apr. 4, 2012).

sentence that was imposed on Ms. Landry as a result.[11]

In sum, in light of Ms. Landry's conviction for a Class 1 felony, the plain language of the applicable Virginia sentencing law mandated a minimum sentence of life imprisonment. Respondent cannot point to any court—including the court that imposed Ms. Landry's sentence—that has ever suggested otherwise. This Court should reject Respondent's novel and unsupported interpretation of Virginia law.

**B.      Even if VA. CODE § 18.2-10(a) had Permitted Suspension of a Life Without Parole Sentence, the Sentence Imposed Upon Ms. Landry Violated *Miller*.**

Beyond her misreading of VA. CODE § 18.2-10(a) and Virginia's sentencing laws, Respondent is mistaken in suggesting that the sentencing judge's supposed authority to suspend Ms. Landry's life sentence renders Ms. Landry's sentencing constitutional under *Miller*. On the contrary, even assuming that the sentencing judge had possessed implicit authority to suspend Ms. Landry's life sentence, the sentence imposed upon her was nonetheless unconstitutional under *Miller*.

Pursuant to *Miller*, not only must Ms. Landry's sentencing judge have been provided with "the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles," 132 S. Ct. at 2475, the judge was constitutionally required to undertake an individualized evaluation of the appropriate and constitutionally proportional sentence for Ms. Landry, including consideration of, among other things, her age, vulnerability to negative influences, lack of maturity, and her "limited control over [her] own environment and lack [of]

---

[11]      Although Ms. Landry moved, pursuant to VA. CODE § 16.1-272, for the court to treat her as a juvenile, the trial judge summarily denied the motion and sentenced her as an adult because, as the state prosecutor urged at sentencing, VA. CODE § 18.2-10(a) provided the judge with no such discretion and mandated a sentence of life in prison or death. *See Thomas v. Commonwealth*, 419 S.E.2d 606, 617-18 (Va. 1992) *abrogated on other grounds by Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 645 S.E.2d 261 (Va. 2007).

ability to extricate [herself] from horrific, crime-producing settings." *Id.* at 2464, 2468 (quoting *Roper v. Simmons*, 543 U.S. 551, at 569 (2005)). Any scheme that fails to require consideration of such factors is constitutionally invalid. *Id*. at 2475. For this reason, the Iowa Supreme Court recently concluded that a juvenile who was originally sentenced to a mandatory sentence of life without parole, but whose sentence was subsequently commuted by the governor of Iowa to 60 years, was nonetheless "entitled to be sentenced with consideration of the factors identified in *Miller*" because he was originally sentenced "without the court's consideration of any mitigating factors as demanded by *Miller*." *Ragland*, 2013 WL 4309970, at *13.

The transcript of Ms. Landry's sentencing hearing demonstrates that the sentencing judge did not give Ms. Landry any individualized consideration before ordering that she spend the rest of her life in prison. As an initial matter, Ms. Landry's hearing was extremely brief. At the start of the hearing, the judge summarily denied Ms. Landry's written motion for new trial, stating "If you want to put something in writing and file it with the record, that's fine, but I'm not going to take up time to hear it. I've got a jury trial supposed to start up here in five minutes . . . ." (Hearing Tr. at 7). In the short time the judge allotted for Ms. Landry's sentencing hearing, the court proceeded to hear from the victim's mother; Dr. Evan Nelson, a psychologist who was "appointed by the Court to evaluate Holly specifically with regard to issues that might be mitigating if there were a capital sentencing phase"; and three other fact witnesses. None of the witnesses who testified on Ms. Landry's behalf provided the Court with the information that would be required for it to carry out an individualized consideration of an appropriate sentence under *Miller*. (*See e.g.*, Hearing Tr. at 9-31, 33-39). Indeed, Dr. Nelson testified that his evaluation of Ms. Landry was limited specifically to "capital sentencing where the potential issues before the Court might be the death penalty versus life without parole." (Hearing Tr. at

28).[12]  The other three witnesses who testified on Ms. Landry's behalf, all of whom were guards

at the various prison facilities that housed Ms. Landry prior to sentencing, were asked only one

substantive question regarding whether Ms. Landry had ever given them "any trouble." (Hearing

Tr. at 34).

The evidence elicited from Dr. Evans and the three fact witnesses falls woefully short of

constituting the mitigating evidence and individualized consideration required under *Miller* prior

to imposition of the "harshest possible penalty for juveniles." 132 S. Ct. at 2475.  Consequently,

even if the sentencing judge could theoretically suspend Ms. Landry's sentence, he imposed her

life without parole sentence without any individualized consideration of her youth or other

mitigating factors, in clear violation of *Miller*.

## IV.   IN THE ALTERNATIVE, *MILLER* ANNOUNCED A WATERSHED PROCEDURAL RULE THAT APPLIES RETROACTIVELY TO CASES ON COLLATERAL REVIEW

*Miller* has "effected a profound and sweeping change" in how juveniles are sentenced in

cases where there is the potential for a sentence of life in prison without the possibility of parole.

*See Whorton v. Bockting*, 549 U.S. 406, 421 (2007).  Accordingly, if the Court did not announce

a substantive constitutional rule in *Miller*, it announced a watershed procedural rule that satisfies

the twin requirements of *Teague,* and for that reason must be applied retroactively to Ms.

Landry's case.

As set forth in Ms. Landry's petition, a watershed rule of criminal procedure is one that

(1) implicates "the fundamental fairness and accuracy of the criminal proceeding," *Saffle v.*

*Parks*, 494 U.S. 484, 495 (1990), and (2) "alter[s] our understanding of the *bedrock procedural*

---

[12]      Dr. Nelson's testimony, in conjunction with the abbreviated nature of the hearing, provides further evidence that Ms. Landry's sentencing judge did not view himself as having discretion beyond selecting one of the two punishments expressly permitted under VA. CODE § 18.2-10(a).

*elements*" of that proceeding's fairness, *Sawyer v. Smith*, 497 U.S. 227, 242 (1990) (emphasis in original). *Miller* satisfies the first requirement for a watershed rule because it announces a "foundational principle" in the context of juvenile sentencing: Application of a mandatory punishment without particularized consideration of the defendant's youth "poses too great a risk of disproportionate punishment." 132 S. Ct. at 2469. *Miller* also satisfies the second requirement because it has fundamentally altered our bedrock understanding of criminal proceedings by invalidating sentencing schemes in 28 states and the federal government. *See Whorton*, 549 U.S. at 471; *Miller*, 132 S. Ct. at 2471.

Respondent points to a number of decisions that were deemed not to announce a watershed rule, but they are all fundamentally different than *Miller*, because the holding in *Miller* does far more than simply "remove[] some remote possibility of arbitrary infliction" of a sentence. *Beard v. Banks*, 542 U.S. 406, 419-20 (holding that even though States may not impose "a requirement that the jury find a potential mitigating factor unanimously before that factor may be considered in the sentencing decision[,]" such a rule is not a watershed rule); *see also Sawyer*, 497 U.S. at 244-245 (inaccurate closing arguments that diminish the jury's sense of responsibility for a capital sentencing decision, although unconstitutional, do not give rise to a watershed rule fundamental to the integrity of the criminal proceeding). *Miller* holds that *every* sentence imposed on a juvenile pursuant to Virginia's mandatory life-without-parole sentencing regime is unconstitutional, mandating an individualized consideration of youth that fundamentally alters the constitutional calculus for every juvenile defendant and forecloses imposition of life without parole on those defendants whose youth renders it a disproportionate punishment. That is a watershed rule that fundamentally alters the procedural requisites for a constitutional sentence. *Miller* thus applies retroactively to Ms. Landry's case.

## V.     CONCLUSION

For the reasons set forth above, Ms. Landry respectfully requests that this Court: Vacate her sentence and order a new sentencing proceeding in which a Virginia court must assess an appropriate sentence for Ms. Landry after taking into account her youth at the time of the crime, her demonstrated capacity for change, and other individual mitigating factors, as required by the U.S. Supreme Court in *Miller v. Alabama*, 132 S. Ct. 2455 (2012).


Date:   August 26, 2013                                     Respectfully submitted,


_____// s //_____
RICHARD F. SHORDT (VSB # 80928)
WILMER CUTLER PICKERING
   HALE & DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000 (tel)
(202) 663-6363 (fax)

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I certify that on this 26th day of August 2013, I caused the foregoing to be filed under this Court's CM/ECF procedures, which will send a notification of the filing to opposing counsel.

_____ // s // _____
RICHARD F. SHORDT (VSB # 80928)
WILMER CUTLER PICKERING
   HALE & DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000 (tel)
(202) 663-6363 (fax)

*Counsel for Petitioner*
