IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HOLLY MICHELLE LANDRY,

      Petitioner,

v.                                                Civil Action No. **3:13CV367**

PHYLLIS A. BASKERVILLE,

      Respondent.

### MEMORANDUM OPINION

Holly Michelle Landry, a Virginia inmate proceeding by counsel, submitted this successive petition pursuant to 28 U.S.C. §§ 2254 and 2244(b)(2)(A) ("Successive § 2254 Petition").[1] Landry, who was sixteen at the time she committed her crimes, argues that her life sentence without the possibility of parole violates the Eighth Amendment[2] in light of *Miller v. Alabama*, 132 S. Ct. 2455 (2012).[3] (Succ. § 2254 Pet. 8, ECF No. 2.) Landry contends that *Miller* announced a new, previously unavailable, rule of constitutional law, made retroactive to cases on collateral review, thus entitling her to relief. (*Id.* at 8.) Respondent moves to dismiss, arguing, *inter alia*, that Landry lacks entitlement to relief because the rule announced in *Miller*

---

[1] Landry submitted a Successive § 2254 Petition on this Court's standard forms (ECF No. 1) and second Successive § 2254 Petition on non-standard forms (ECF No. 2.). Both petitions raise the same claims. Neither petition includes any additional claims. For ease of reference, the Court cites to Landry's Successive Petition on the non-standard form. (ECF No. 2.)

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] In *Miller v. Alabama*, the Supreme Court of the United States held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 132 S. Ct. at 2460.

fails to satisfy the requirement of 28 U.S.C. § 2244(b)(2)(A).[4]  (Mem. Supp. Mot. Dismiss ("Mem. Supp.") 4, ECF No. 7.)  The matter is ripe for disposition.  The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 636(c)[5] and 2254.

Because Landry fails to satisfy the requirements of 28 U.S.C. § 2244(b)(2)(A) by showing her claim predicated on *Miller* "relies on a new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court*," the Court will grant the Motion to Dismiss and will deny the Successive § 2254 Petition.  28 U.S.C. § 2244(b)(2)(A) (emphasis added).[6]  Specifically, Landry fails to demonstrate that the Supreme Court's language in *Miller* constituted an explicit or implicit holding that the rule in *Miller* applies retroactively to cases on collateral review.

---

[4] This statute provides:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court*, that was previously unavailable . . . .

28 U.S.C. § 2244(b)(2)(A) (emphasis added).  Critically, as explained more fully below, for purposes of pursuing a successive § 2254 petition under § 2244(b), Congress made the Supreme Court "the only entity that can ma[k]e a new rule retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (alteration in original) (internal quotation marks omitted).

[5] On June 6, 2013 and August 5, 2013, the parties consented in writing to the jurisdiction of the magistrate judge.  (ECF Nos. 3, 9); 28 U.S.C. § 636(c)(1).

[6] Because Landry fails to satisfy the threshold requirements of 28 U.S.C. § 2244(b)(2)(A), the Court declines to address Respondent's other arguments for dismissing the petition. *See McLeod v. Peguese*, 337 F. App'x 316, 318 (4th Cir. 2009) (indicating the district court should address the requirements of 28 U.S.C. § 2244(b)(2) as a preliminary issue).

## I. Procedural History

This Court provided the procedural history when ruling on Landry's first § 2254 Petition:

> Landry was convicted in the Circuit Court for the City of Norfolk of capital murder, two counts of abduction, two counts of robbery, two counts of conspiracy, and malicious wounding. On February 11, 1998, the Court sentenced her to life imprisonment plus fifty years. Landry appealed her convictions to the Court of Appeals of Virginia which denied her petition for appeal on August 4, 1998. The Supreme Court of Virginia denied her petition for appeal on October 29, 1998.
>
> On March 4, 2004, Landry filed a petition for a writ of habeas corpus in the Circuit Court. The court dismissed her petition on May 25, 2004 as barred by the state statute of limitations. The Supreme Court of Virginia refused her petition for appeal on November 16, 2004.

*Landry v. Wheeler*, No. 3:05cv120, at 1 (E.D. Va. Mar. 29, 2006).[7]

On March 29, 2006, this Court found Landry's first § 2254 Petition time-barred, denied the petition, and dismissed the action. *Id.* at 4. On August 8, 2006, the United States Court of Appeals for the Fourth Circuit dismissed Landry's petition for appeal and denied a certificate of appealability. *Landry v. Wheeler*, 193 F. App'x 261, 261 (4th Cir. 2006).

On May 30, 2013, the Fourth Circuit granted Landry authorization to file a successive habeas corpus petition. *In re Landry*, No. 13-247 (4th Cir. May 30, 2013). On June 6, 2013, Landry filed her Successive § 2254 Petition.

## II. Standard for Successive § 2254 Petitions

### A.     Appellate Authorization

"AEDPA [The Antiterrorism and Effective Death Penalty Act of 1996] greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications." *Tyler v. Cain*, 533 U.S. 656, 661 (2001). "Before a second or successive

---

[7] This Court did not review the factual history surrounding Landry's conviction when denying her first petition as time-barred. The facts underlying Landry's conviction do not pertain to the statutory inquiry before this Court.

application . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). In granting Landry authorization to file a second petition, the Fourth Circuit found that Landry "ma[de] a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C).[8]

The Fourth Circuit's prima facie determination that Landry satisfied § 2244(b) "is 'tentative in the following sense: the district court must dismiss the motion that [the Fourth Circuit has] allowed the applicant to file, without reaching the merits of the motion, if the court finds that the movant has not satisfied the requirements for the filing of such a motion.'" *McLeod v. Peguese*, 337 F. App'x 316, 324 (4th Cir. 2009) (quoting *Bennett v. United States*, 119 F.3d 468, 470 (7th Cir. 1997)). This Court must examine Landry's claim "'*de novo*'" and dismiss it if this Court finds it fails to satisfy the requirements of § 2244(b)(2)(A). *In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013) (quoting *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1358 (11th Cir. 2007)); *see McLeod*, 337 F. App'x at 317-18 (affirming district court's dismissal of a successive § 2254 petition because the petitioner failed to satisfy the requirements of

---

[8] The Fourth Circuit had limited time to assess whether Landry made such a prima facie showing. The pertinent statute required the Fourth Circuit to rule on Landry's application to file a successive § 2254 petition within thirty (30) days after Landry filed her application. *See* 28 U.S.C. § 2244(b)(3)(D); *see Tyler*, 533 U.S. at 664 (observing that the courts of appeals operate under a "stringent time limit" in authorizing petitioners to file successive habeas applications).

At least one circuit court has noted the benefit of erring on the side of granting permission to file a successive application for collateral relief when a petitioner sought review because of the *Miller* decision. *See Evans-Garcia v. United States*, --- F.3d ----, Nos. 13-1661, 13-1662, 2014 WL 800498, at *3 (1st Cir. Feb. 28, 2014) (observing that "if we err in granting certification, ample opportunity for correcting that error will remain"). The United States Court of Appeals for the First Circuit, however, emphasized that even the government's concession in that case that *Miller* met a prima facie showing of retroactivity fails to control the issue and "warrant[s] a fuller exploration by the district court." *Id.* (citation omitted) (internal quotation marks omitted).

4

§ 2244(b)(2) even where the Fourth Circuit previously granted authorization to file the successive petition).

**B.**     **Statutory Threshold for Proceeding in the District Court**

Landry's Successive § 2254 Petition asserts entitlement to relief based upon one claim: Landry's mandatory life sentence without the possibility of parole violates the Eighth Amendment under *Miller v. Alabama*, 132 S. Ct. 2455 (2012). (Succ. § 2254 Pet. 8.) This Court must review Landry's successive petition to determine whether it complies with the requirements of 28 U.S.C. § 2244(b)(2)(A).

Title 28 of the United States Code, section 2244(b)(2)(A) states in pertinent part:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
> > (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable . . . .

28 U.S.C. § 2244(b)(2)(A).

If the authorized successive petition "asserts a claim that was *not* presented in a previous petition, the claim *must be dismissed* unless it falls within one of two narrow exceptions." *Tyler*, 533 U.S. at 661 (second emphasis added). The relevant exception before this Court "is for certain claims relying on new rules of constitutional law." *Id.* at 662 (citing 28 U.S.C. § 2244(b)(2)(A)). Pursuant to this exception, the successive habeas petition must satisfy three requirements: "First, the rule on which the claim relies must be a new rule of constitutional law; second, the rule must have been made retroactive to cases on collateral review by the Supreme Court; and third, the claim must have been previously unavailable." *Id.* (internal quotation marks omitted). As explained below, Landry's petition must be dismissed because she fails to satisfy the second requirement.

For purposes of § 2244(b)(2)(A), "the Supreme Court is the only entity that can 'ma[k]e' a new rule retroactive." *Id.* at 663 (alteration in original). The Supreme Court explained in *Tyler* that "'made' means 'held' and, thus, the requirement is satisfied only if [the Supreme] Court has held that the new rule is retroactively applicable to cases on collateral review." *Id.* at 662. In reaching this conclusion, the Supreme Court rejected the notion that the lower courts "have to engage in the difficult legal analysis that can be required to determine questions of retroactivity in the first instance." *Id.* at 664. As explained below, because the Supreme Court has not held that the rule announced in *Miller* applies retroactively to cases on collateral review, this Court must grant the Motion to Dismiss.

### III. *Miller v. Alabama*

Before addressing Landry's Successive § 2254 Petition, this Court reviews the *Miller* decision. In *Miller*, the Supreme Court held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 132 S. Ct. 2455, 2460 (2012). In reaching this conclusion, the Supreme Court noted that "[b]ecause that holding is sufficient to decide these cases, we do not consider [the] alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles . . . ." *Id.* at 2469. *Miller* addressed the cases of "two 14-year-old offenders . . . convicted of murder and sentenced to life imprisonment without the possibility of parole." *Id.* at 2460. The Supreme Court concluded that state laws mandating life without the possibility of parole "prevent those meting out punishment from considering a juvenile's 'lessened culpability' and greater 'capacity for change,' and runs afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties." *Id.* (citation omitted).

Importantly, *Miller* explicitly states that it "does not categorically bar a penalty for a class of offenders or type of crime—as, for example, [the Court] did in *Roper* or *Graham*." *Id.* at 2471. As explained below, the Supreme Court's refusal in *Miller* to "categorically bar a penalty for a class of offenders or type of crime," *id.*, strongly suggests that the Supreme Court did not make the rule in *Miller* retroactive to cases on collateral review. *See infra* Part IV.B.3.b.

## IV. Analysis

### A. *Miller* Announced a New Rule

The parties do not dispute that *Miller* announced a new rule. The Court looks to *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny to determine whether *Miller* entitles Landry to pursue a successive habeas petition under 28 U.S.C. § 2244(b)(2)(A). *See Tyler v. Cain*, 533 U.S. 656, 665-67 (2001). *Teague* provides that new rules of constitutional criminal procedure generally do not apply to cases on collateral review. *Teague*, 489 U.S. at 310. This principle protects the societal interest in the finality of convictions. *Id.* "'No one, not criminal defendants, not the judicial system, not society as a whole is benefitted by a judgment providing that a [person] shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.'" *Id.* at 309 (quoting *Mackey v. United States*, 401 U.S. 667, 691 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)).

The Supreme Court has prescribed a three-step process for determining whether a constitutional rule of criminal procedure applies to a case on collateral review. *Beard v. Banks*, 542 U.S. 406, 411 (2004).

> First, the court must determine when the defendant's conviction became final. Second, it must ascertain the legal landscape as it then existed, and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. That is, the court must decide whether the rule is actually new. Finally, if the rule

is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity.

*Id.* (citations omitted) (internal quotation marks omitted).

The first two steps of this process do not require extended analysis in this instance as both parties correctly agree that *Miller* announced a new rule.[9] (Mem. Supp. 4 ("Landry admits *Miller* is a new rule . . . .").) Moreover, general judicial agreement exists that *Miller* established a new rule of constitutional law because it "held for the first time that the 'Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.'" *In re Morgan*, 713 F.3d 1365, 1366-67 (11th Cir. 2013) *reh'g en banc denied*, 717 F.3d 1186, 1187 (11th Cir. 2013) (quoting *Miller*, 132 S. Ct. at 2469); *see, e.g.*, *Evans-Garcia v. United States*, --- F.3d ----, Nos. 13-1661, 13-1662, 2014 WL 800498, at *3 (1st Cir. Feb. 28, 2014) (citation omitted); *Craig v. Cain*, No. 12-30035, 2013 WL 69128, at *1 (5th Cir. Jan. 4, 2013); *Martin v. Symmes*, No. 10-cv-4753 (SRN/TNL), 2013 WL 5653447, at *15 (D. Minn. Oct. 15, 2013). Indeed, when required to examine the retroactivity of *Miller*, three cases in this district have acknowledged that *Miller* constitutes a new rule. *See Sanchez v. Vargo*, No. 3:13CV400, 2014 WL 1165862, at *4 (E.D. Va. Mar. 21, 2014) ("[I]t seems rather clear that *Miller* announced a new rule."); *Contreras v. Davis*, No. 1:13cv772 (JCC), 2013 WL 6504654, at *3 (E.D. Va. Dec. 11, 2013) ("*Miller* undoubtedly created a new rule . . . ." (citing *Craig*, 2013 WL 69128, at *1)); *Johnson v. Ponton*, No. 3:13-CV-404, 2013 WL 5663068, at *4 (E.D. Va. Oct. 16, 2013) ("The parties concede that *Miller* announced a 'new' constitutional rule within the meaning of *Teague*.").

---

[9] The Supreme Court has explained that "'a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (quoting *Teague*, 489 U.S. at 301). "[A] holding is not so dictated . . . unless it would have been 'apparent to all reasonable jurists.'" *Id.* (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)).

**B.     The Supreme Court Has Not Made the Rule Announced in *Miller* Retroactive to Cases on Collateral Review**

    **1.     Society's Interest in Finality Results in New Rules Generally Not Being Retroactive**

Given the societal interest in the finality of convictions, under *Teague*, "new rules of constitutional law are generally 'not . . . applicable to those cases which have become final before the new rules are announced.'" *United States v. Mathur*, 685 F.3d 396, 399 (4th Cir. 2012) (omission in original) (quoting *Teague*, 489 U.S. at 310). *Teague* recognizes two narrow exceptions to the general rule of nonretroactivity. *Id.* (citations omitted). First, a new rule applies retroactively if it is a substantive rule. A substantive rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,'" *Teague*, 489 U.S. at 307 (citation omitted) (internal quotation marks omitted), "or addresses a 'substantive categorical guarante[e] accorded by the Constitution,' such as a rule 'prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Saffle v. Parks*, 494 U.S. 484, 494-95 (1990) (alteration in original) (quoting *Penry v. Lynaugh*, 492 U.S. 302, 329, 330 (1989), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002)). Second, a rule may be applied retroactively if it constitutes a "watershed rule[ ] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Beard*, 542 U.S. at 417 (citation omitted) (internal quotation marks omitted).[10]

In conducting the pertinent inquiry, as this Court does under 28 U.S.C. § 2244(b)(2)(A), it must be observed that the Supreme Court has rejected the notion that the lower courts "have to

---

[10] To qualify as a watershed rule, the rule must meet two requirements. "First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction. Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (citations omitted) (internal quotation marks omitted).

engage in the difficult legal analysis that can be required to determine questions of retroactivity in the first instance." *Tyler*, 533 U.S. at 664. Rather, this Court looks to the language of the Supreme Court's opinions to determine whether the Supreme Court has *held* that the *Miller* rule constitutes a substantive rule of criminal procedure or a watershed rule. *Id.* at 662.

### 2. Only the Supreme Court Can Make a New Rule Retroactive in the Context of 28 U.S.C. § 2244(b)(2)(A)

For purposes of pursuing a successive § 2254 petition under § 2244(b)(2)(A), Congress made the Supreme Court "the only entity that can ma[k]e a new rule retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (alteration in original) (internal quotation marks omitted). Accordingly, under § 2244(b)(2)(A), a "new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme Court." *Id.* at 663. The Supreme Court makes a case retroactive on collateral review through a single express holding or by multiple cases "if the holdings in those cases necessarily dictate retroactivity of the new rule." *Id.* at 666. As explained below, generally, only when the new rule falls within the first *Teague* exception for substantive rules will the holdings of multiple cases "necessarily dictate the retroactivity of the new rule." *Id.*

### a. Interaction of § 2244(b)(2)(A) and the First *Teague* Exception for Substantive Rules

"[A] decision that fits within the first *Teague* exception [is] the paradigmatic example of multiple holdings that together 'necessarily dictate' retroactivity." *In re Sparks*, 657 F.3d 258, 261 (5th Cir. 2011) (citing *Tyler*, 533 U.S. at 668-69 (O'Connor, J., concurring)). In her concurring opinion in *Tyler*, Justice O'Connor explained how the Supreme Court can "'ma[k]e' a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule." *Tyler*, 533 U.S. at 668 (O'Connor, J., concurring) (alteration in original) (citation omitted).

10

[I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review. In such circumstances, we can be said to have "made" the given rule retroactive to cases on collateral review.

The relationship between the conclusion that a new rule is retroactive and the holdings that "ma[k]e" this rule retroactive, however, must be strictly logical- *i.e.*, the holdings must *dictate* the conclusion and not merely provide principles from which one *may* conclude that the rule applies retroactively. . . . The Court . . . can be said to have "made" a rule retroactive within the meaning of § 2244(b)(2)(A) only where the Court's holdings logically permit no other conclusion than that the rule is retroactive.

It is relatively easy to demonstrate the required logical relationship with respect to the first exception articulated in *Teague v. Lane*. Under this exception, "a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" When the Court holds as a new rule in a subsequent case that a particular species of primary, private individual conduct is beyond the power of the criminal lawmaking authority to proscribe, it necessarily follows that this Court has "made" that new rule retroactive to cases on collateral review. The Court has done so through its holdings alone, without resort to dicta and without any application of principles by lower courts.

*Id.* at 668-69 (second alteration in original) (emphasis in original) (citations omitted).

For example, the Supreme Court has held that a new constitutional rule which absolutely "'prohibit[s] a certain category of punishment for a class of defendants because of their status or offense,'" would qualify for retroactivity under the first *Teague* exception. *Saffle*, 494 U.S. at 494-95 (quoting *Penry*, 492 U.S. at 330). In *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court held that the Eighth Amendment prohibited the execution of juvenile offenders. *Id.* at 568. Thus, by the combined effect of the holding in *Roper* and the holding in *Saffle* regarding the parameters of the first *Teague* exception, the substantive rule in *Roper* was made retroactive to cases on collateral review as a matter of logical necessity. *See In re Sparks*, 657 F.3d at 262 (citations omitted).

> **b.    Interaction of § 2244(b)(2)(A) and the Second *Teague* Exception for Watershed Rules**

Unless the Supreme Court expressly holds that a new rule constitutes a watershed rule, it is highly unlikely the petitioner will be able to demonstrate that by multiple rulings and "logical necessity" the rule is "inherently retroactive." *Id.* at 261 (citing *Tyler*, 533 U.S. at 666.) For alleged watershed rules, "'[t]he most [the petitioner] can claim is that, based on the principles outlined in *Teague*, [the Supreme] Court *should* make [the underlying decision] retroactive to cases on collateral review—not that logic dictates that it already has.'" *Id.* at 259 (first, second, and fourth alteration in original) (quoting *Tyler*, 533 U.S. at 666).

As explained below, neither a single express holding nor multiple cases dictate that the Supreme Court "made" the rule in *Miller* retroactive to cases on collateral review.

> **3.    The Rule in *Miller* Fails to Satisfy the Requirements of 28 U.S.C. § 2244(b)(2)(A)**

> **a.    No Explicit Holding Makes the Rule in *Miller* Retroactively Applicable to Cases on Collateral Review**

The Supreme Court has not expressly held that the *Miller* rule applies retroactively to cases on collateral review. *See In re Morgan*, 713 F.3d at 1367 ("[T]he Supreme Court has not held that *Miller* is retroactively applicable to cases on collateral review"); *Johnson*, 2013 WL 5663068, at *4 ("[T]he Supreme Court has been silent on the retroactive application of the *Miller* rule.")

> **b.    Multiple Holdings Fail to Dictate *Miller's* Retroactivity**

Because no single express holding exists, this Court must determine whether multiple holdings of the Supreme Court dictate *Miller*'s retroactivity. As explained above, unless Landry demonstrates that the rule in *Miller* constitutes a substantive rule, it is doubtful she can demonstrate the Supreme Court has made *Miller* retroactive to cases on collateral review.

Hence, at this juncture it is helpful to further define what constitutes a substantive rule within the first *Teague* exception.

### i.     Substantive Rules Revisited

As previously discussed, a substantive rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,'" *Teague*, 489 U.S. at 307 (citation omitted) (internal quotation marks omitted), "or addresses a 'substantive categorical guarante[e] accorded by the Constitution,' such as a rule 'prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Saffle*, 494 U.S. at 494-95 (alteration in original) (quoting *Penry*, 492 U.S. at 330). Stated differently, such substantive rules essentially provide that, regardless of the amount of process afforded by the government, the government may not impose "'a certain category of punishment for a class of defendants because of their status or offense.'" *Id.* (quoting *Penry*, 494 U.S. at 330). For example, the rules barring the execution of individuals with a significantly diminished mental capacity or the imposition of a life without parole sentence on a juvenile offender for a non-homicide offense constitute substantive rules. *In re Sparks*, 657 F.3d at 262 (citations omitted).

"Such [substantive] rules apply retroactively because they necessarily carry a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him." *Schiro v. Summerlin*, 542 U.S. 348, 352 (2004) (citation omitted) (internal quotation marks omitted). "[R]ules that regulate only the *manner of determining* the defendant's culpability are procedural." *Id.* at 353 (citing *United States v. Bousely*, 523 U.S. 614, 620 (1998)). New procedural rules "merely raise the possibility that someone convicted [or sentenced] with [the] use of the invalidated procedure might have" received a different result. *Id.* at 352. Thus, only watershed procedural rules apply retroactively to cases on collateral review. *Id.*

ii.    **No Substantive Rule in** *Miller*

First, the Supreme Court affirmatively stated that its *Miller* decision "does not categorically bar a penalty for a class of offenders or type of crime—as, for example, [the Court] did in *Roper* or *Graham*." *Miller*, 132 S. Ct. at 2471. As the *Sanchez* court aptly concluded, "[t]he plain language of *Miller* indicates that the Supreme Court intended *Miller* to be a procedural, rather than a substantive rule." *Sanchez*, 2014 WL 1165862, at *5 (citing *Johnson*, 2013 WL 5663068, at *5); *see Contreras*, 2013 WL 6504654, at *3 ("[T]he Supreme Court's language indicates that it intended the *Miller* rule to be procedural, rather than substantive." (citing *Miller*, 132 S. Ct. at 2471)); *Johnson*, 2013 WL 5663068, at *5 ("The plain language of *Miller* itself dictates that the *Miller* rule is procedural, rather than substantive.").

In *Miller*, the Supreme Court held that "the Eighth Amendment forbids a *sentencing scheme* that mandates life in prison without the possibility of parole for juvenile offenders." 132 S. Ct. at 2469 (emphasis added) (citation omitted). This holding fails to prohibit, absolutely, the imposition of a sentence of life imprisonment without the possibility of parole on minors. The Supreme Court explained that "the confluence of [ ] two lines of precedent," including *Graham*, and similar cases categorically banning certain sentencing practices, drove the *Miller* decision. *Miller*, 132 S. Ct. at 2463-64. However, the Court then expressly distinguished *Miller* from *Graham*, stating that,

> [o]ur decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain *process*—considering an offender's youth and attendant characteristics—before imposing a particular penalty.

*Id.* at 2471 (emphasis added).[11]

---

[11] In contrast to the language in *Miller*, the Supreme Court's language in *Graham v. Florida*, 560 U.S. 48 (2010), clearly indicates the announcement of a substantive rule. In *Graham*, the Supreme Court reviewed "whether the Constitution permits a juvenile offender to

14

By the plain language of the Supreme Court's decision, *Miller* fails to qualify as a substantive rule "because it does not place a class of conduct (homicide by a juvenile) beyond the power of the state to proscribe, nor does it prohibit a category of punishment (life in prison without parole) for a class of defendants (juveniles) based on their offense (homicide)." *Martin*, 2013 WL 5653447, at *16. Rather than categorically barring all sentences of life imprisonment for juveniles, "*Miller* changed the procedure by which a sentencer may impose a sentence of life without parole on a minor by 'requir[ing] [the sentencing entity or judge] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *In re Morgan*, 713 F.3d at 1368 (first alteration in original) (quoting *Miller*, 132 S. Ct. at 2469). Indeed, after *Miller*, juveniles convicted of homicide who are provided with the requisite procedural safeguard may still receive sentences of life without parole.

"Because *Miller* 'adds a procedural safeguard that must be followed prior to imposition of [a life] sentence,' its rule is procedural and not substantive." *Sanchez*, 2014 WL 1165862, at *6 (alteration in original) (quoting *Johnson*, 2013 WL 5663068, at *5); *accord In re Morgan*, 713 F.3d at 1368; *Craig*, 2013 WL 69128, at *2; *Martin*, 2013 WL 5653447, at *16.

---

be sentenced to life in prison without parole for a nonhomicide crime." *Graham*, 560 U.S. 52-53. The Court held

> that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment. Because "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood," those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.

*Id.* at 74-75 (alteration in original) (quoting *Roper*, 543 U.S. at 574). The Supreme Court further explained that "[c]ategorical rules tend to be imperfect, but one is necessary here." *Id.* at 75.

15

Accordingly, *Miller* fails to qualify as a substantive rule.  Therefore, *Miller* cannot satisfy the first *Teague* exception to nonretroactivity.

> iii.   **Logical Necessity Fails to Dictate that the Supreme**
> **Court Has Held *Miller* to Be a Watershed Rule**

No relevant Supreme Court precedent indicates that the Supreme Court has held the rule in *Miller* announced a "watershed rule[ ] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding," which would be the second means under which the Supreme Court could have made *Miller* retroactive.  *Beard*, 542 U.S. at 417 (citation omitted) (internal quotation marks omitted).  To qualify as a watershed rule, a new rule must meet two requirements.  "First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction.  Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding."  *Whorton*, 549 U.S. at 418 (citations omitted) (internal quotation marks omitted).

Because the relevant precedent expresses graves doubts that any new watershed rules of criminal procedure remain undiscovered, such precedent all but forecloses the notion that existing precedent logically dictates that *Miller* constitutes a watershed rule.  *See Beard*, 542 U.S. at 417.  The Supreme Court explained that *Teague*'s second exception

> is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty.  And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] *unlikely that many such components of basic due process have yet to emerge*, it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception.

*Id.* (alteration and omission in original) (emphasis added) (citations omitted) (internal quotation marks omitted); *see Sanchez*, 2014 WL 1165862, at *6-7.  Since *Teague*, the Supreme Court has "rejected every claim that a new rule satisfied the requirements for watershed status."  *Whorton*, 549 U.S. at 418 (citations omitted); *Johnson*, 2013 WL 5663068, at *5 ("Since *Teague*, the

Supreme Court has reviewed numerous claims that new rights fall within this exception, and it has rejected every single one of them." (citing *Whorton*, 549 U.S. at 418)). "In providing guidance as to what might fall within this exception, [the Supreme Court has] repeatedly referred to the rule of *Gideon v. Wainwright*, (right to counsel), and only to this rule." *Beard*, 542 U.S. at 417 (citations omitted).

In *Gideon*, "the Court held that counsel must be appointed for any indigent defendant charged with a felony." *Whorton*, 549 U.S. at 419. *Gideon* concluded that, "[w]hen a defendant wishes to be represented by counsel is denied representation, . . . the risk of an unreliable verdict is intolerably high." *Whorton*, 549 U.S. at 419 (citations omitted). The new rule announced in *Gideon* eliminated the "intolerably high" risk of an unreliable verdict. *Whorton*, 549 U.S. at 419 (citations omitted).

Compared to *Gideon*, the rule in *Miller* has a more limited scope and pertains only to the sentencing phase of the proceeding. The relationship of the rule announced in *Miller* "to the accuracy of the factfinding process is far less direct and profound," when compared to *Gideon*. *Whorton*, 549 U.S. at 419. While it adds procedural safeguards, *Miller* simply fails to effect the "profound and 'sweeping'" change of the sort prompted by *Gideon*. *Whorton*, 549 U.S. at 421 (quoting *Beard*, 542 U.S. at 418). The Supreme Court "[has] not hesitated to hold that less sweeping and fundamental rules [applicable only to the sentencing phase of trial] do not fall within *Teague*'s second exception." *Beard*, 542 U.S. at 418 (citing *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997); *Sawyer v. Smith*, 497 U.S. 227, 242-45 (1990)).[12]

*Miller*, unlike *Gideon*, causes an incremental change and affords a right to defendants in a limited class of cases. Thus, the Court cannot "conclude that 'this systematic rule . . . is an

---

[12] *See Sanchez*, 2014 WL 1165862, at *7 n.8 (explaining the limitations of the holdings in *O'Dell* and *Sawyer*).

'absolute prerequisite to fundamental fairness.'" *Beard*, 542 U.S. at 419 (quoting *Sawyer*, 497 U.S. at 244); *see Craig*, 2013 WL 69128, at \*2; *Sanchez*, 2014 WL 1165862, at \*7 (concluding that "*Miller* [fails to] fall[ ] within *Teague*'s second exception"); *Johnson*, 2013 WL 5663068, at \*6 ("While the new rule announced in *Miller* is certainly profound, it does not announce a watershed rule of criminal procedure."). For the foregoing reasons, Landry has failed to demonstrate that multiple holdings of the Supreme Court make the *Miller* rule a watershed rule of criminal procedure.

### 4. No Implicit Holding of Retroactivity

Finally, Landry contends that the Supreme Court implicitly held that *Miller* retroactively applies to cases on collateral review. (Pet'r's Opp'n Resp't Mot. Dismiss 11-12, ECF No. 11.) In support of this argument, Landry notes that Mr. Miller's case, an action before the Supreme Court on direct appeal of his conviction and sentence, was consolidated with *Jackson v. Hobbs*, a case on collateral review from the Arkansas Supreme Court's denial of state habeas relief. *See Miller*, 132 S. Ct. at 2461-63. The Supreme Court remanded *Jackson* "for further proceedings not inconsistent with [its] opinion." *Id.* at 2475. Landry argues that, "[b]ecause the Supreme Court simultaneously created the new rule in *Miller* and applied it to Mr. Jackson on collateral review in a separate but consolidated case, the only logical conclusion is that the rule is retroactive." (Pet'r's Opp'n Resp't Mot. Dismiss 12.) Such an argument misperceives the nature of the new rule doctrine created in *Teague*.

The *Teague* rule against the nonretroactivity of new rules resembles an affirmative defense. *See Noland v. Dixon*, No. 93-4011, 1995 WL 253149, at \*1-2 (4th Cir. May 1, 1995). While a federal court must address the application of *Teague* if the State raises the issue, "'a federal court may . . . decline to apply *Teague* if the State does not argue it.'" *Frazer v. South Carolina*, 430 F.3d 696, 704 n.3 (4th Cir. 2005) (quoting *Caspari v. Bohlen*, 510 U.S. 383, 389

(1994)). In *Miller*, the Respondent, Arkansas, failed to argue that *Teague* barred relief for Mr.

Jackson. *See* Brief for Respondent, *Miller v. Alabama*, 132 S. Ct. 2455 (2012), No. 10-9647,

2012 WL 523347, at *1-46. Accordingly, in *Miller*, the "failure [of Arkansas] to address the

matter in its opening briefs to [the Supreme C]ourt could provide adequate grounds to forego

[the *Teague*] inquiry altogether." *Frazer*, 430 F.3d at 704 n.3 (citations omitted). Thus, the

Supreme Court's treatment of Mr. Jackson's case fails to demonstrate that the Supreme Court

has held that the rule in *Miller* applies to cases on collateral review.[13] *Sanchez*, 2014 WL

1165862, at *8 (citing *Johnson*, 2013 WL 5663068, at *4). No implicit holding exists that *Miller*

applies retroactively to cases on collateral review.

## V. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 6) will be

GRANTED. Landry's claim will be DISMISSED and her Successive § 2254 Petition will be

DENIED. The action will be DISMISSED.

---

[13] The Supreme Court's treatment of the new rule announced in *Padilla v. Kentucky*, 559 U.S. 356 (2010) dispels the notion that the simultaneous creation of a new rule and application of that rule to a case on collateral review implicitly constitutes a holding as to any issue of retroactivity under *Teague*. *See Johnson*, 2013 WL 5663068, at *4. In *Padilla*, the Supreme Court held that criminal defense attorneys must inform non-citizen clients of the risks of deportation arising from guilty pleas. 559 U.S. at 366. As the Honorable James R. Spencer, United States District Judge, observed:

> In *Padilla*, the petitioner brought a collateral challenge to his conviction, and in reversing the decision below, the Supreme Court announced a new constitutional rule. *Padilla*, 559 U.S. at 374-75; *Chaidez[ v. United States*, 133 S. Ct. 1103, 1113 (2013)]; *Kentucky v. Padilla*, 253 S.W.3d 482, 483 ([Ky.] 2008)). Notwithstanding its application of a new constitutional rule to Padilla's collateral claim, the Supreme Court later [evaluated the rule under *Teague* and] announced that the *Padilla* rule would not be applied retroactively to other cases on collateral review.

*Johnson*, 2013 WL 5663068, at *4 (citing *Chaidez*, 133 S. Ct. 1113).

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Landry meets this standard. *See Johnson v. Ponton*, No. 13-CV-404, at 2 (E.D. Va. Oct. 21, 2013) (granting certificate of appealability "as to specific issue regarding whether the new constitutional rule announced in *Miller* is retroactively applicable to cases on collateral review.") A certificate of appealability will be GRANTED.

An appropriate Order shall issue.

M. Hannah Lauck
United States Magistrate Judge

Date: 3/31/14
Richmond, Virginia